Lincoln D. Bandlow, Esq. (SBN 170449)
LATHROP & GAGE LLP
1888 Century Park East, Suite 1000
Los Angeles, CA 90067
Telephone: (310) 789-4600
Facsimile: (310) 789-4601
Email: lbandlow@lathropgage.com

Cameron Garrison (admitted *pro hac vice*)
LATHROP & GAGE LLP
Kansas City, MO 64108
Telephone: (816) 292-2000
Facsimile: (816) 292-2001
Email: cgarrison@lathropgage.com

Attorney for Defendants
Hair U Wear, Inc. (erroneously sued as
"Celebrity Signatures International, Inc.)

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DC LABS, INC., a Delaware corporation,<br><br>  Plaintiff,<br>vs.<br>CELEBRITY SIGNATURES INTERNATIONAL, INC., a Delaware Corporation,<br><br>  Defendant. | Case No. 12-cv-1454 BEN (DHB)<br><br>HAIRUWEAR'S (ERRONEOUSLY SUED AS "CELEBRITY SIGNATURES INTERNATIONAL, INC.") OPPOSITION TO DC LABS' MOTION TO DISMISS DEFENDANT/COUNTER-CLAIMANT HAIRUWEAR, INC.'S FIFTH AND SIXTH CAUSES OF ACTION AND; 12F MOTION TO STRIKE AFFIRMATIVE DEFENSES<br><br>Hearing Date:<br>Date:   December 17, 2012<br>Court room 3, 4th Floor<br>Time:   10:30 a.m. |
| HAIRUWEAR, INC. ( named herein as Celebrity SignaturesInternational, Inc.), a Delaware Corporation),<br><br>  Cross-Complainant,<br>v.<br>DC LABS, INC., a Delaware Coporation, DOES 1-10,<br>  Cross-Defendant. | |

OPPOSITION TO MOTION TO
DISMISS AND STRIKE

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................................1

II. STATEMENT OF FACTS ...................................................................................1

III. MOTION TO DISMISSED MUST BE DENIED...............................................3

    A.    Standard for a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ........................................................................3

    B.    HairUWear's Fourth Counterclaim Is Sufficiently Plead .....................4

IV. THE MOTION TO STRIKE MUST BE DENIED.............................................7

    A.    Standard for a Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f) ...........................................................................7

    B.    HairUWear's Affirmative Defenses More Than Meet The Low "Fair Notice" Pleading Standard............................................................8

    C.    Defendants' Affirmative Defenses Are Proper As a Matter of Law.......................................................................................................12

    D.    Leave To Amend Should Be Granted In The Event The Court Is Inclined To Grant The Second Motion ............................................13

V. CONCLUSION...................................................................................................14

# TABLE OF AUTHORITIES

**Cases**

*99 v. C.I.T. Corp.*,
  776 F.2d 866 (9th Cir. 1985) ................................................................. 10

*Abdul-Jabbar v. General Motors Corp.*,
  85 F.3d 407 (9th Cir. 1996) ..................................................................... 6

*Ameristar Fence Prod., Inc. v. Phx. Fence Co.*,
  2010 U.S. Dist. LEXIS 81468 at *1 (D. Ariz. July 15, 2010) ................. 9

*Ariosta v. Fallbrook Union High School*,
  2009 WL 1604569 (S.D. Cal. June 4, 2009) ......................................... 10

*Ashcroft v. Iqbal*,
  129 S.Ct. 1937 (1009) ......................................................................... 8, 9

*Augustus v. Board of Public Instruction*,
  306 F.2d 862, 868 (5th Cir. 1962) ........................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ......................................................... 6, 8, 9, 10, 11

*Bogazici Hava Tasimaciligi A.S. v. McDonnell Douglas Corp.*,
  932 F.2d 972, *2 (9th Cir. 1991) ............................................................. 7

*Conley v. Gibson*,
  355 U.S. 41 (1957) ............................................................................ 3, 10

*Desert European Motorcars Ltd. v. Desert European Motorcars, Inc.*,
  2011 WL 3809933 (C.D.Cal. August 25, 2011) ................................... 11

*Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*,
  458 F.3d 931, 935 (9th Cir.2006) .................................................................................... 4

*First Nat'l Ins. Co. of Am. v. Camps Servs., Ltd*,
  No. 08-cv-12805, 2009 WL 22861, at *2 (E.D.Mich. Jan. 5, 2009) ...................... 9

*Foman v. Davis*,
  371 U.S. 178 (1962) ................................................................................................ 13

*Garber v. Mohammadi*,
  2011 U.S. Dist. LEXIS 57190, at *11 (C.D. Cal. Jan. 19, 2011) ........................... 8

*Grocery Outlet Inc. v. Albertson's Inc.*,
  497 F.3d 949 (9th Cir. 2007) .................................................................................. 6

*Howey v. U.S.*,
  481 F. 2d 1187 (9th Cir. 1973) ............................................................................. 13

*Imperial Tobacco Ltd. v. Philip Morris, Inc.*,
  899 F.2d 1575 (Fed. Cir. 1990) .......................................................................... 5, 6

*J & J Sports Prods., Inc. v. Jimenez*,
  2010 WL 5173717, (S.D. Cal. December 15, 2010) ........................................... 10

*J&J Sports Productions, Inc. v. Scace*,
  No. 10-2496, 2011 WL 2132723, at *3 (S.D. Cal. May 27, 2011) ..................... 11

*Japan Telecom, Inc. v. Japan Telecom America Inc.*,
  287 F.3d 866, 870 (9th Cir. 2002) ........................................................................ 11

*Kohler v. Islands Rests., LP*,
  2012 WL 524086, at *2 (S.D. Cal. February 15, 2012) .................................. 8, 10

*Meas v. CVS Pharm., Inc.*,
  2011 WL 2837432, at *3 (S.D. Cal. July 14, 2011) .......................................... 8, 9

*Microsoft Corp. v. A-Tech Corp.*,
   855 F. Supp. 308 (C.D. Cal. 1994) ................................................................... 3

*Pareto v. F.D.I.C.*,
   139 F.3d 696 (9th Cir. 1998). .......................................................................... 3

*Romantine v. CH2M Hill Eng'rs, Inc.*,
   No. 09-973, 2009 WL 3417469, at *1 (W.D.Pa. Oct. 23, 2009) ........................... 9

*Sanders v. Kennedy*,
   794 F.2d 478, 481 (9th Cir. 1986) .................................................................... 3

*Securimetrics, Inc. v. Hartford Casualty Insurance, Co.*,
   2005 WL 2463749, *2 (N.D. Cal) ..................................................................... 7

*Stabilisierundfonds Fur Wein v. Kaiser*,
   647 F.2d 200, 201 (D.C. Cir.1981) ................................................................... 7

*State of California ex rel State Lands Comm'n v. United States*,
   512 F. Supp. 36 (N.D. Cal. 1981) ..................................................................... 7

*Transgo, Inc. v. Ajac Transmission Parts Corp.*,
   768 F.2d 1001 (9th Cir. 1996) .......................................................................... 6

*Trustmark Ins. Co. v. C&K Mkt., Inc.*,
   No. 10-465, 2011 WL 587574, at *1 (D. Or. Feb. 10, 2011) ............................... 9

*United States v. City of Redwood City*,
   640 F.2d 963 (9th Cir. 1981) ............................................................................ 3

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) ............................................................................ 3

*Vistan Corp. v. Fadei USA, Inc.*,

   No. C–10–4862–JCS, 2011 WL 1544796, at *7 (N.D.Cal. Apr.25, 2011). ...............................................................................................................12

*Weddle v. Bayer AG Corp.*,

   No. 11-817, 2012 WL 1019824, at *3 (S.D. Cal. March 26, 2012) ..............10, 13

*William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*,

   744 F.2d 935 (2d Cir. 1984) .................................................................................7

*Worden v. Cal. Fig Syrup Co.*,

   187 U.S. 516 (1903)............................................................................................11

*Wyshak v. City Nat'l Bank*,

   607 F.2d 824 (9th Cir. 1979) ........................................................................10, 12

*Zivkovic v. Southern California Edison Co.*,

   302 F.3d 1080 (9th Cir. 2002) ......................................................................12, 13

**Statutes**

15 U.S.C. § 1127.......................................................................................................4, 6

**Rules**

Fed. R. Civ. Proc. 12(f.........................................................................................7, 13

Fed. R. Civ. Proc. 8(c)(1 ..........................................................................................9

**Treatises**

*Moore's Federal Practice* 3d, § 12.37[1], [4] ..........................................................8

## I. INTRODUCTION

Plaintiff DC Labs, Inc.'s ("DC Labs") Motion to Dismiss and Motion to Strike are merely attempts to deprive Defendant HairUWear, Inc. (sued erroneously as Celebrity Signatures International, Inc. ["CSI"]) (herein "HairUWear") of the opportunity to fully litigate its counterclaim for abandonment and its affirmative defenses. DC Labs even goes so far as to urge this Court to adopt the incorrect legal standard on which to evaluate the pleading of affirmative defenses. DC Labs incorrectly asserts that Rule 8(a)'s "short and plain statement" standard applies to affirmative defenses when, in fact, Rule 8(c) governs affirmative defense pleadings and requires only that a defendant "affirmatively *state* any avoidance or affirmative defense" – a lesser requirement that is met by simply giving the plaintiff fair notice of the defense. HairUWear's affirmative defenses more than meet this low standard. Moreover, DC Labs' contention that several of CSI's affirmative defenses are insufficient as a matter of law have no merit because DC Labs mischaracterizes the defenses. Accordingly, DC Labs has failed to meet the high burden required to justify striking affirmative defenses at the pleading stage or dismiss a counterclaim and thus this Motion should be denied.

## II. STATEMENT OF FACTS

Established in 1997, Celebrity Signatures International, Inc. ("CSI") merged into Eva Gabor International, Ltd. with the resultant entity changing its name to HairUWear, Inc. Dkt. 12 at 2:1-4, 11:26-12:3[1]. HairUWear, and its previous iterations, have been engaged in the distribution, advertising, promotion, offering for sale and sale of wigs and "alternative hair accessories" including hairpieces, hair extensions and add-in or add-on hair accessories constructed primarily of synthetic and/or human hair for many years prior to the commencement of this action. *Id*. at

---

[1] The First Amended Answer to Complaint, Affirmative Defenses and Amended Counterclaims (herein "Amended Answers and Counterclaims") is available at Docket #12.

1  12:17-22.  DC Labs purports to sell hair care products namely shampoos,
2  conditioners, and styling spray, styling lotion, styling gel and styling mousse.  Dkt. 1
3  at 2:15-17.[2]  DC Labs has also asserted ownership of several trademarks utilizing the
4  designation "OVATION" in connection with the sale of its products.  Dkt. 1 at 3:6-
5  17.  These trademarks include U.S. federal trademark registration no. 4,082,488 for
6  OVATION CELL THERAPY (the "488 Registration"), U.S. federal trademark
7  registration no. 4,142, 800 for OVATION HAIR (the "800 Registration"), and U.S.
8  federal trademark no. 4,082,489 for OVATION (with design) (the "489
9  Registration").  *Id*. at Exhs. 1, 2, and 3; Dkt. 12 at 13:15-23.  These registrations
10 purport to have been filed with the United States Patent and Trademark Office on
11 January 28, 2011, November 10, 2011 and January 28, 2011, respectively.  *Id*.

12      CSI, predecessor to HairUWear, began using a style designation of "Ovation"
13 with a CSI product, the RAQUEL WELCH® wig prior to the filing dates of the 488,
14 800, or 489 Registrations, respectively.  Dkt. 12 at 13:23-14:1.  DC Labs has not
15 alleged that either CSI or HairUWear has used "Ovation" on anything other than
16 wigs, or in any category of product that would fall into the category of "hair care
17 preparations."  *See* Dkt. 1 at Exhs. 1, 2, and 3.  Moreover, DC Labs has not used
18 "Ovation" on all the goods identified in its 400, 488 and 489 Registrations.  Dkt. 12
19 at 20:27-21:3; Dkt. 1 at Exhs. 1, 2, and 3.

20      Nevertheless, counsel for DC Labs sent HairUWear two separate cease and
21 desist letters, to which HairUWear responded outlining the erroneousness of DC
22 Lab's claims and pointing to various Office Actions by the United States Patent and
23 Trademark Office in which DC Labs had expressly distinguished their marks from
24 other uses of "Ovation."  *See* Dkt. 12 at 15:11-16:12, Exhs. A, B and C.  Instead of
25 responding to HairUWear's response letters, DC Labs elected to file this law suit on
26 June 15, 2012.  Dkt. 1.  DC Labs plead the 400, 488 and 489 Registrations as the
27
28 [2] The Complaint is available at Docket #1.

2
OPPOSITION TO MOTION TO DISMISS AND STRIKE                CASE NO. 11-CV-0817 JLS (NLS)

basis for the instant lawsuit.  Dkt. 1 at 3:6-17; Dkt. 12 at 13:4-9.  HairUWear answered and counterclaimed on August 21, 2012.  Dkt. 7.  DC Labs filed a Motion to Dismiss Counterclaims and Motion to Strike Affirmative Defenses on September 10, 2012.  Dkt. 9.  In response to this Motion, with leave of the Court and the stipulation of DC Labs, HairUWear amended its Answer and Counterclaims on October 8, 2012.  Dkt.  12.  On October 19, 2012, DC Labs filed the instant Motion. Dkt. 14.  Given DC Labs' complete disregard for the valid arguments eviscerating DC Labs' alleged potential claims against Defendant and its insistence on filing this lawsuit in the face of those invalidating facts, it is notable that DC Labs purports to file the instant motion to streamline the process to meritorious claims in an effort to save both the parties and this Court's time and resources.  *See* Dkt. 14-1 at 1:10-13.

### III. MOTION TO DISMISSED MUST BE DENIED

#### A. Standard for a Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

In evaluating the merits of a Motion to Dismiss under Rule 12(b)(6), the Court "must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them." *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the [nonmoving party] can prove no set of facts in support of his claim which would entitle him to relief." *Microsoft Corp. v. A-Tech Corp.*, 855 F. Supp. 308, 311 (C.D. Cal. 1994), *citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  "In a 12(b)(6) motion to dismiss, the court must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party." *Id.*, *citing Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987); *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).  The complaint must be construed in the light most favorable to the nonmoving party.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).  Here, the allegations in the Amended Counterclaims are more than sufficient to support

HairUWear's claim for trademark abandonment.  Certainly, DC Labs has presented nothing to suggest that it would be beyond doubt that HairUWear could not prove facts to support its claim.

## B. HairUWear's Fourth Counterclaim Is Sufficiently Plead

The Lanham Act provides for two ways that a trademark may be abandoned, namely, through (1) nonuse, or (2) the mark becoming generic.  *See* 15 U.S.C. § 1127.   In the instant matter, HairUWear has alleged that DC Labs has abandoned its trademarks for "Ovation" through nonuse.[3]  To plead a claim for abandonment due to nonuse, the following two elements must be plead: (1) "discontinuance of trademark use" and (2) "intent not to resume such use." *Electro Source, LLC v. Brandess-Kalt-Aetna Group, Inc.*, 458 F.3d 931, 935 (9th Cir.2006) (citing 15 U.S.C. § 1127).  DC Labs asserts that HairUWear has not plead any allegations supporting this cause of action.  This is incorrect.

HairUWear has explicitly plead DC Labs' own non-use: "[u]pon information and belief, DC Labs has either never used its alleged trademarks with all of the goods listed in the '488, '800 and '489 Registrations, or it has discontinued use of its alleged trademarks with all the goods listed in the '488, '800 and '489 Registrations." *See* Dkt. 12 at 20:27-21:4.  In addition, HairUWear, through its pleading, has expressly identified exactly which uses from each of the three Registrations HairUWear alleges have been abandoned.  HairUWear expressly alleged that, in the 488 Registration, DC Labs has never used "Ovation Cell Therapy" in conjunction with "styling preparations, styling sprays, styling lotion, styling gel and styling mousse." *Id.* at 14:19-25.  HairUWear also expressly alleged that, in the 489 Registration, DC Labs has never used "Ovation" in conjunction with styling lotion,

---

[3] To the extent that DC Labs argues that HairUWear has not plead genericness of the alleged "Ovation" mark, HairUWear need only plead generic or non-use to support a claim for abandonment, not both.  15 U.S.C. § 1127.  HairUWear is not alleging that "Ovation" is generic.

styling gel and styling mousse." *Id*. at 15:4-10.  And finally, HairUWear explicitly plead that DC Labs has not made any use of "Ovation Hair" in conjunction with <u>any</u> of the uses claimed in the 800 Registration.  *Id*. at 14:27-15:3.

DC Labs cites no authority for its proposition that because HairUWear has not plead that DC Labs has discontinued the use of all the goods listed in the 488 and 489 Registrations, that HairUWear cannot maintain a claim for abandonment for those uses that have been discontinued.  And no such authority exists.  HairUWear has fully plead the basis for its claim for abandonment with respect to each of the three alleged registrations (including the '800 registration, for which HairUWear has alleged complete abanodment).  Thus, HairUWear has plead the element of non-use required for its abandonment claim.

Second, HairUWear has demonstrably plead DC Labs' intention not to resume use (or ever start use) on all the goods named in the Registrations through several allegations, including the allegation that DC Labs has knowingly allowed third party use.  Indeed, HairUWear explicitly plead DC Labs' intent not to resume such use: "Upon information and belief, DC Labs does not intend to begin or resume use of its alleged trademarks with the goods listed in the '488, '800 and '489 Registrations."  Dkt. 12 at 21:4-6.  Additionally, HairUWear has plead DC Labs' allowance of third parties to use the designation "Ovation" on personal grooming products to demonstrate DC Labs' lack of intent to resume or commence use of "Ovation" on some of the goods named in the Registrations.  "Upon information and belief, DC Labs has demonstrated its lack of intent to commence or resume use of its alleged trademarks by knowingly permitting the use of the designation 'Ovation' with personal grooming products by third parties throughout the period in which DC Labs has claimed exclusive use of its alleged OVATION trademarks."  Dkt. 12 at 21:7-11; *see also Id*. at 21: 12-17.

In *Imperial Tobacco Ltd. v. Philip Morris, Inc*., 899 F.2d 1575 (Fed. Cir. 1990), the Federal Circuit clarified that the Lanham Act did away with the common law

1  requirement that intent to abandon must be proved.  Rather, where a "*prima facie*
2  abandonment of a mark is established by proof of its nonuse for two consecutive
3  years," a registrant must overcome that *prima facie* case "with evidence that is
4  'discontinued' use of a mark without an 'intent not to resume' use." *Id*. at 1579 ("In
5  effect, the presumption eliminates the challenger's burden to establish the intent
6  element of abandonment as an initial part of its case."); *Grocery Outlet Inc. v.
7  Albertson's Inc.*, 497 F.3d 949, 954 (9th Cir. 2007) (recognizing the holding in
8  *Imperial Tobacco*).  Indeed, "[i]ntent not to resume may be inferred from
9  circumstances."  15 U.S.C. § 1127; *see also Abdul-Jabbar v. General Motors Corp.*,
10 85 F.3d 407, 411 (9th Cir. 1996); *Grocery Outlet Inc. v. Albertson's Inc.*, 497 F.3d
11 949, 954 n. 2 (9th Cir. 2007).  The circumstances present here, such as DC Labs'
12 allowance of third party use, are a persuasive factor in demonstrating abandonment.
13 *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1017-18 (9th Cir.
14 1996) (failure to exercise sufficient or adequate control over trademark can determine
15 abandonment).  HairUWear recognizes that third party use is not determinative of an
16 abandonment claim.  That it is not dispositive, does not, however, make it irrelevant.
17 The third party use alleged by HairUWear bears on the DC Labs lack of intent to
18 return to using the Ovation marks.  *See* Dkt. 12 at 21:7-17.
19     Moreover, DC Labs' argument that this counterclaim constitutes the kind of bare
20 bones, conclusory pleading disallowed under *Twombly*, does not survive the slightest
21 scrutiny upon examination of the actual counterclaim.  First and foremost,
22 HairUWear has provided all the known details about the types of abandoned goods
23 named in the Registrations and DC Labs' failure to ever use "Ovation" in conjunction
24 with any of those goods.  Dkt. 12 at 14:19-15:10, 20:27-21:17.  It is unclear how
25 HairUWear would plead a negative with any further specificity.  Specific details
26 regarding a lack of use of a trademark are difficult to provide other than stating that
27 no such use has occurred.  HairUWear's counterclaim for abandonment has been
28 adequately plead and is supported by law and thus DC Labs' Motion to Dismiss the

Fourth Counterclaim must be dismissed.

## IV. THE MOTION TO STRIKE MUST BE DENIED

### A. Standard for a Motion to Strike Pursuant to Federal Rule of Civil Procedure 12(f)

Motions to strike are disfavored.  *Bogazici Hava Tasimaciligi A.S. v. McDonnell Douglas Corp.*, 932 F.2d 972, *2 (9th Cir. 1991); *citing Stabilisierundfonds Fur Wein v. Kaiser*, 647 F.2d 200, 201 (D.C. Cir.1981); *State of California ex rel State Lands Comm'n v. United States*, 512 F. Supp. 36, 38 (N.D. Cal. 1981) ("Motions to strike are often looked on with disfavor because of the tendency for such motions to be asserted for dilatory purposes.").  Pursuant to Federal Rule of Civil Procedure 12(f) only an "insufficient defense, or any redundant, immaterial, impertinent, or scandalous matter" is the appropriate subject for a motion to strike.  Fed. R. Civ. Proc. 12(f).  Specifically, as pertaining to affirmative defenses, motions to strike "should only be granted if the asserted defense is clearly insufficient as a matter of law under any set of facts the defendant *might* allege."  *Securimetrics, Inc. v. Hartford Casualty Insurance, Co.*, 2005 WL 2463749, *2 (N.D. Cal.) (emphasis added).  As the Second Circuit explained: "A motion to strike an affirmative defense…for legal insufficiency is not favored and will not be granted 'unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defenses.'"  *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984) *vacated on other grounds and remanded*, 478 U.S. 1015, 106 S.Ct. 3324 (1986) (citations omitted); *accord Augustus v. Board of Public Instruction*, 306 F.2d 862, 868 (5th Cir. 1962) (court should grant motions to strike only if the pleading has no possible relation to the controversy).   "Moreover, even when facts are not disputed…a 'motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law.'  [T]hese questions quite properly are viewed as determinable only after discovery and a hearing on the

merits," even in cases where the question is "purely legal." *Id*.; *see also Moore's Federal Practice* 3d, § 12.37[1], [4] (Rule 12(f) motions to strike defenses should be denied if sufficiency or defense depends on disputed issues of fact or questions of law).

Here, DC Labs is seeking to do exactly what all of the above authority precludes – adjudicate HairUWear's affirmative defenses without the opportunity for evidence to be presented.

### B. HairUWear's Affirmative Defenses More Than Meet The Low "Fair Notice" Pleading Standard

The pleading of affirmative defenses is governed by Federal Rule of Civil Procedure 8(c). Rule 8(c) requires only that a party "affirmatively *state* any avoidance or affirmative defense." F.R.C.P. 8(c)(1) (emphasis added). Rule 8(c) does not contain the "short and plain statement" language of Rule 8(a). While *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) heightened the pleading standards of Federal Rule of Civil Procedure 8(a) to require a showing of factual basis or plausibility to successfully plead claims for relief, neither the Ninth Circuit nor the Supreme Court have ever extended this heightened pleading standard to affirmative defenses plead under Rule 8(c).

While district courts in this Circuit have been split on this issue, the Southern District of California has expressly refused to extend the heightened pleading standard of *Twombly* to the pleading of affirmative defenses. *Kohler v. Islands Rests., LP*, 2012 WL 524086, at *2 (S.D. Cal. February 15, 2012) ("[T]his court declines to extend the *Twombly*/*Iqbal* pleading standards to affirmative defenses."); *Meas v. CVS Pharm., Inc.*, 2011 WL 2837432, at *3 (S.D. Cal. July 14, 2011) ("Although a close issue, the court concludes that affirmative defenses are not subject to a heightened pleading standard."). This position has been echoed by numerous other district courts in the Ninth Circuit. *Garber v. Mohammadi*, 2011 U.S. Dist. LEXIS 57190, at *11 (C.D. Cal. Jan. 19, 2011) ("[T]his court is not convinced that

1  *Twombly* should also apply to affirmative defenses."); *Trustmark Ins. Co. v. C&K*
2  *Mkt., Inc.*, No. 10-465, 2011 WL 587574, at *1 (D. Or. Feb. 10, 2011) (declining to
3  extend *Twombly* to affirmative defenses); *Ameristar Fence Prod., Inc. v. Phx. Fence*
4  *Co.*, 2010 U.S. Dist. LEXIS 81468 at *1 (D. Ariz. July 15, 2010) ("The Court is of
5  the view that the pleading standards enunciated in *Twombly* and *Ashcroft v. Iqbal*,
6  129 S.Ct. 1937 (1009), have no application to affirmative defenses pled under Rule
7  8(c)."); *see also First Nat'l Ins. Co. of Am. v. Camps Servs., Ltd*, No. 08-cv-12805,
8  2009 WL 22861, at *2 (E.D.Mich. Jan. 5, 2009) (finding *Twombly*'s analysis of the
9  "short and plain statement" requirement inapplicable to affirmative defenses);
10 *Romantine v. CH2M Hill Eng'rs, Inc.,* No. 09-973, 2009 WL 3417469, at *1
11 (W.D.Pa. Oct. 23, 2009) (declining to apply *Twombly* to either affirmative or
12 negative defenses).  The courts declining to apply *Twombly* to affirmative defenses
13 have applied the logic and precedent of local and federal rules, as well as precedential
14 case law.
15      First and foremost, *Twombly* itself expressly addressed only Rule 8(a)(2)'s
16 requirement that a pleading contain "a short and plain statement of the claim showing
17 that the pleader is entitled to relief," and did not address the pleading requirements
18 for Rule 8(c), which governs the pleading of affirmative defenses.  *Twombly*, 550
19 U.S. at 555.  Unlike Rule 8(a)(2)'s requirement that entitlement to relief must be
20 shown, Rule 8(c) simply requires  that the responding party "affirmatively state" any
21 affirmative defenses.  Fed. R. Civ. Proc. 8(c)(1) ("In responding to a pleading, a party
22 must affirmatively state any avoidance or affirmative defense").
23      Moreover, "practical and judicial economy considerations further support
24 application of the traditional pleading standard for affirmative defenses." *Meas*, at
25 *3.  It would be unrealistic to require defendants to investigate and prepare an answer
26 under heightened Rule 8(a) standards within 21 days of service of the complaint as
27 required by Rule 12(a)(1), and because a heightened pleading standard may require
28 courts to address numerous amendments as discovery reveals new defenses.  *Id.*

1   Additionally, the Southern District of California has noted that "[g]reat specificity is
2   not required at the pleading stage because a defense which is not asserted in the
3   answer is ordinarily waived." *Ariosta v. Fallbrook Union High School*, 2009 WL
4   1604569 (S.D. Cal. June 4, 2009); *citing 99 v. C.I.T. Corp.*, 776 F.2d 866, 870, n. 2
5   (9th Cir. 1985).
6          Finally, to apply the *Twombly* standard to affirmative defenses would also
7   contradict controlling Ninth Circuit precedent, as well as the developing pattern in
8   this district.  As set by the Ninth Circuit, the standard for pleading an affirmative
9   defense under Rule 8(c) is merely "whether it gives plaintiff fair notice of the
10  defense."  *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979); (*citing*
11  *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957)); *Weddle v. Bayer AG Corp.*, No. 11-
12  817, 2012 WL 1019824, at *3 (S.D. Cal. March 26, 2012) (relying on *Wyshak* and
13  rejecting the heightened standard of pleading for affirmative defenses); *J & J Sports*
14  *Prods., Inc. v. Jimenez*, 2010 WL 5173717, (S.D. Cal. December 15, 2010) (applying
15  *Wyshak* to evaluate affirmative defenses).[4]  In *Wyshak*, the Ninth Circuit held that an
16  answer simply alleging that "plaintiff's claims are barred by the applicable statute of
17  limitation" with no specific mention of what statute applied in the answer itself was
18  enough to give the plaintiff fair notice of the defense.  *Wyshak*, 607 F.2d at 827.
19  Accordingly, as recently as March 2012, the Southern District has declined to apply
20  *Twombly* to the pleading requirements of affirmative defenses.  *Weddle v. Bayer AG*
21  *Corp.*, *supra*. (relying on *Wyshak*, "[t]he Court declines to extend the heightened
22  pleading standards of *Twombly* to the pleading of affirmative defenses."); *see also*
23  *Kohler v. Islands Restaurants, supra.* (ruling on February 16, 2012 that *Twombly* did
24  not apply to affirmative defenses); *J&J Sports Productions, Inc. v. Scace*, No. 10-

---

26  [4] Notably, DC Labs relies on *J&J Sports* for its argument that affirmative defenses
27  that merely negate aspects of a claim are not properly plead as affirmative defenses
    (*see* Section IV.C, *infra*.), but ignores its failure to apply *Twombly* to affirmative
28  defenses.

1    2496, 2011 WL 2132723, at *3 (S.D. Cal. May 27, 2011) (same).

2    Moreover, even if affirmative defenses are subject to the *Twombly* standard of
3    pleading (which they are not), HairUWear's affirmative defenses meet that standard.
4    Though DC Labs broadly claims that each and every affirmative defense plead by
5    HairUWear is deficient, it chose to only address two specific affirmative defenses:
6    unclean hands and acquiescence.  Accordingly, HairUWear will address only those
7    affirmative defenses that DC Labs has chosen to attack.

8    First, DC Labs claims that HairUWear has not put DC Labs on notice of the
9    basis of HairUWear's affirmative defense of unclean hands.  In reality, the Amended
10   Answer and Counterclaims is rife with details regarding DC Labs' conduct
11   constituting unclean hands.  "Trademark law's unclean hands defense springs from
12   the rationale that 'it is essential that the plaintiff should not in his trade mark, or in his
13   advertisements and business, be himself guilty of any false or misleading
14   representation.'"  *Japan Telecom, Inc. v. Japan Telecom America Inc.*, 287 F.3d 866,
15   870 (9th Cir. 2002) (*citing Worden v. Cal. Fig Syrup Co.*, 187 U.S. 516, 528 (1903)).
16   In particular, where HairUWear has alleged that DC Labs has made representations
17   on its website regarding the use of its products that contradict any allegations which
18   could support its own Complaint, HairUWear has clearly demonstrated allegations
19   for a potential unclean hands affirmative defense for misleading its consumers.  *See*
20   Dkt. 12 at 16:13-20.  HairUWear has clearly also plead DC Labs' unclean hands with
21   respect to its "materially false and misleading" trademark applications.  *Id*. at 17:25-
22   18:4; *see also Id*. at 17:13-19:10.  Simply because these allegations are found within
23   the body of the Amended Counterclaim, as opposed to listed under each affirmative
24   defense heading, makes them no less supportive of the affirmative defenses.  *Desert*
25   *European Motorcars Ltd. v. Desert European Motorcars, Inc*., 2011 WL 3809933
26   (C.D.Cal. August 25, 2011) (considering the allegations of the entire Answer and
27   Counterclaims to evaluate the pleading of affirmative defenses).

28   DC Labs also attempts to attack the pleading of HairUWear's acquiescence

1  affirmative defense by arguing that the "defense does not identify any conduct by
2  Plaintiff that suggests that Plaintiff consented to Counterclaimant's acts." *See* Dkt.
3  14-1 at 12:11-16.  DC Labs goes on to state that HairUWear has plead no facts at all.
4  *Id*.  DC Labs' hyperbole is not persuasive.  HairUWear has plead allegations
5  supporting a potential acquiescence affirmative defense.  DC Labs failure to police its
6  marks clearly suggests consent to the use of these marks.  *See* Dkt. 12 at 21:7-17.  DC
7  Labs' failure to address any of the remaining sixteen affirmative defenses on the
8  grounds of lack of specificity is telling.  And given that DC Labs offers no support
9  for such an argument, that argument must be disregarded.
10      All of HairUWear's affirmative defenses are adequately plead under the
11 prevailing standard of pleading for affirmative defenses: *Wyshak*'s notice standard.
12 Affirmative defenses which are "boilerplate," and "are standard affirmative defenses,
13 [are] appropriate at the outset of the case ...." *Vistan Corp. v. Fadei USA, Inc.*, No.
14 C–10–4862–JCS, 2011 WL 1544796, at *7 (N.D.Cal. Apr.25, 2011).   Moreover,
15 even though not necessary, the affirmative defenses are also plead adequately under
16 *Twombly*.  DC Labs' near blanket proclamation that each and every affirmative
17 defense is inadequately plead must be disregarded.
18     **C.     Defendants' Affirmative Defenses Are Proper As a Matter of Law**
19      Moreover, DC Labs' contention that HairUWear's Seventh, Eleventh, Twelfth,
20 Fifteenth, Sixteenth and Seventeenth affirmative defenses are not affirmative
21 defenses has no merit.  These are HairUWear's affirmative defenses for no punitive
22 damages, no attorneys' fees, no injunctive relief, no secondary meaning, not indicator
23 of source, marks not famous and lack of damages, respectively.  DC Labs relies on
24 *Zivkovic v. Southern California Edison Co*., 302 F.3d 1080 (9th Cir. 2002) for its
25 position that these affirmative defenses must be stricken because they merely purport
26 to negate elements of the claim.  *Zivkovic*'s holding is nowhere near that broad.
27 *Zivkovic* stands for the proposition that the affirmative defense of accommodation
28 was not waived by failure to plead it in the answer and allows the defense to be

1  pursued. *Id.* at 1088 ("Edison's attempt to prove that it provided a reasonable
2  accommodation merely negates an element that Zivkovic was required to prove and
3  therefore was not an affirmative defense required to be pled in Edison's answer.").
4  The *Zivkovic* court simply does not state that these affirmative defenses, routinely
5  plead as a matter of course, cannot be plead as such. Moreover, regardless of whether
6  these affirmative defenses are better characterized as denials or affirmative defenses,
7  there is no prejudice to DC Labs (nor have they claimed any) and thus they need not
8  be stricken. *Weddle v. Bayer AG Corp.*, *supra*. at *5 ("[B]ecause Plaintiff is not
9  prejudiced by improperly labeling this denial as a defense, the Court denies Plaintiff's
10 motion to strike"). Nothing in the challenged affirmative defenses is "redundant,
11 immaterial, impertinent, or scandalous" enough to overcome the very high bar to
12 striking an affirmative defense. *See* Fed. R. Civ. Proc. 12(f).

### D. Leave To Amend Should Be Granted In The Event The Court Is Inclined To Grant The Second Motion

For the above-stated reasons, DC Labs' Motion should be denied. Even in the event that the Court finds that any of DC Labs' contentions have merit—either in its request to dismiss or strike—the alleged deficiencies are easily cured by amendment. There is a "strong policy to permit the amending of pleadings," and the "Supreme Court has instructed the lower federal courts to heed carefully the command of Rule 15(a), F.R. Civ.P., by freely granting leave to amend when justice so requires." *Howey v. U.S.*, 481 F. 2d 1187 (9th Cir. 1973)( citing *Foman v. Davis*, 371 U.S. 178 (1962)). Pursuant to Rule 15(a), the Court should grant HairUWear leave to amend their counterclaim and affirmative defenses in the event that it finds any of DC Labs' arguments have merits.

25 //

27 //

## V.  CONCLUSION

For all the above-stated reasons, HairUWear respectfully requests that the Court deny DC Labs' Motion to Dismiss Counterclaims and to Strike Affirmative Defenses.

Dated:  December 3, 2012         LATHROP & GAGE LLP


By: /s/ Cameron Garrison
    Lincoln D. Bandlow
    Cameron Garrison

Attorney for Defendants,
HairUWear, Inc. (sued erroneously as "Celebrity Signatures International, Inc.")